**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

WILLIAM A. RANKIN and
SHIRLEY A. RANKIN,

    Debtors.
_____/

WILLIAM A. RANKIN and
SHIRLEY A. RANKIN,
    Appellants,

v.

JOEL R. DAULT, *et al.,*
    Appellees.
_____/

WILLIAM A. RANKIN and
SHIRLEY A. RANKIN,
    Appellants,

v.

JOEL R. DAULT, *et al.,*
    Appellees.
_____/

WILLIAM A. RANKIN and
SHIRLEY A. RANKIN,
    Appellants,

v.

JOEL R. DAULT, *et al.,*
    Appellees.
_____/

Consolidated Case No. 06-13726
Hon. Gerald E. Rosen

Bankr. Case No. 02-30596
Chapter 7
Hon. Walter Shapero

Case No. 06-13726

Case No. 06-14084

Case No. 06-14179

| | |
|---|---|
| WILLIAM A. RANKIN and<br>SHIRLEY A. RANKIN,<br>    Appellants, | Case No. 06-14910 |

v.

JOEL R. DAULT, *et al.,*
    Appellees.
_____/

# OPINION AND ORDER
## AFFIRMING BANKRUPTCY COURT RULINGS

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     September 17, 2008

PRESENT: Honorable Gerald E. Rosen
               United States District Judge

## I. INTRODUCTION

Debtors/Appellants William A. Rankin and Shirley A. Rankin, proceeding *in pro per,* have appealed a number of Bankruptcy Court rulings to this Court, resulting in the four above-captioned bankruptcy appeals. Specifically, Debtors evidently challenge: (i) a September 8, 2006 opinion and related September 8 and September 29, 2006 orders in which the Bankruptcy Court awarded summary judgment to Defendants/Appellees Joel R. Dault, Progressive Title Insurance Agency, Inc., and Commonwealth Land Title Insurance on Debtors' various state-law claims asserted in Adversary Proceeding No. 04-3044 (Case Nos. 06-14084 and 06-14910); (ii) a September 11, 2006 opinion and corresponding September 8, 2006 order in which the Bankruptcy Court granted the motion of Chapter 7 Trustee Collene K. Corcoran to compromise a claim arising from a

state court suit instituted by Debtors against Paul Wood and Karla Volke-Wood (Case No. 06-14179), and (iii) a July 31, 2006 order in which the Bankruptcy Court awarded sanctions to a number of parties, attorneys, and entities (Case No. 06-13726).

By order dated January 18, 2007, these four matters were consolidated into a single bankruptcy appeal, and the parties were directed to file consolidated briefs stating their positions with respect to all of the issues raised by Debtors in their several appeals. Having reviewed the briefs filed by the parties pursuant to the January 18 order, as well as the attached exhibits and the designated record on appeal, the Court now is prepared to rule on Debtors' various challenges. For the reasons set forth below, the Court affirms in all respects the challenged rulings of the Bankruptcy Court.

## II. **FACTUAL AND PROCEDURAL BACKGROUND**

The general nature and factual and procedural background of the underlying Bankruptcy Court proceedings are summarized in a prior September 23, 2004 opinion issued by this Court in an earlier, related appeal (Case No. 03-71127), and need not be restated at length here. In essence, the bankruptcy proceedings arose principally from the efforts of Debtors/Appellants William and Shirley Rankin to avoid eviction from a residence located at 10982 E. Charring Cross Circle in Whitmore Lake, Michigan. Before filing for bankruptcy protection in February of 2002, Debtors lived at this residence for about four years under a land contract with Paul Wood and Karla Volke-Wood. When Debtors failed to stay current on their payments under this land contract, the Woods sought and obtained state court relief, including a February 4, 2002 order

awarding them possession of the property.

In an effort to remain in the Charring Cross residence, Debtors negotiated with the Woods for the outright purchase of the property. The parties evidently reached an oral agreement on a purchase price of around $280,000, but this agreement was not reduced to writing. Unfortunately, the transaction did not go through, for reasons that are sharply disputed by Debtors and the Woods. Briefly, Debtors contend that they stood ready to fulfill all of their obligations to the Woods — including delivery of the agreed-upon purchase price, most or all of which was to be financed via a loan obtained through Federal Mortgage, a mortgage broker — and that, as a result, the Woods were obligated to produce a deed conveying the property to Debtors. The Woods, on the other hand, contend that the terms of the parties' transaction were altered at the eleventh hour, with the result that the Woods would have netted $10,000 less than the amount to which they had agreed. In any event, after the parties failed to close on the sale of the property, the Woods reinstituted their efforts to take possession of the property, and Debtors, in turn, commenced a voluntary Chapter 7 bankruptcy proceeding, which resulted in an automatic stay of the Woods' state-court efforts to collect the amounts owed by Debtors under the parties' land contract and to evict them from the Charring Cross residence.

Following this failed transaction, Debtors commenced two state-court actions that form the basis for the present appeals. First, within a few days after filing for bankruptcy protection, Debtors brought suit against the Woods to quiet title to the Charring Cross

property and recover damages under various theories.[1] Upon learning of this suit and looking into the matter, Trustee Collene Corcoran agreed to accept the Woods' offer of $10,000 to settle Debtors' claims, and filed a motion with the Bankruptcy Court seeking approval of this proposed settlement. The Bankruptcy Court granted this motion, but this Court reversed this ruling on appeal and remanded for further proceedings, reasoning in a September 23, 2004 opinion that the record was silent as to at least some of the factors that the Bankruptcy Court should have considered in determining whether to approve the Trustee's proposed settlement.

On remand, the Bankruptcy Court conducted an evidentiary hearing spanning several days, during which the court heard the testimony of several witnesses and numerous exhibits were introduced into evidence. Following this hearing, the Bankruptcy Court issued a September 8, 2006 order in which it once again granted the Trustee's motion to compromise the claims asserted in Debtors' state-court suit against the Woods for the sum of $10,000, as well as a corresponding September 11, 2006 opinion setting forth the grounds for its ruling. Through one of the present appeals (Case No. 06-14179), Debtors challenge this ruling.

Next, about two years after filing for bankruptcy protection, Debtors commenced a state-court suit on January 15, 2004 against Defendants/Appellees Joel R. Dault,

---

[1] In her brief on appeal, Trustee Collene Corcoran states without dispute that Debtors did not disclose any interest in the Charring Cross property in the schedule accompanying their bankruptcy petition, nor did they disclose any potential claim against the Woods regarding this property. Instead, the Trustee evidently learned about Debtors' state-court suit during a meeting with creditors.

Progressive Title Insurance Agency, Inc., and Commonwealth Land Title Insurance (collectively, the "Title Defendants"), asserting various claims predicated on the failure of these parties to secure the transfer of the Charring Cross property from the Woods to Debtors back in February of 2002. The Trustee removed this suit to the Bankruptcy Court, and the Title Defendants moved for the dismissal of the case or for an award of summary judgment in their favor. In an opinion dated September 8, 2006 and related September 8 and September 29, 2006 orders, the Bankruptcy Court awarded summary judgment to the Title Defendants, and this ruling is the subject of two of Debtors' appeals (Case Nos. 06-14084 and 06-14910).

In the course of the Bankruptcy Court proceedings, a number of motions were filed seeking the imposition of sanctions against Debtors for their filing of claims and papers that lacked a basis in fact or law and/or were presented for improper purposes. Following a June 14, 2006 hearing, the Bankruptcy Court entered a July 31, 2006 order directing Debtors to pay (i) $1,000 in attorney fees and costs to the Woods, (ii) $1,000 in attorney fees and costs to the Woods' former attorney, Robert Detweiler, (iii) $2,000 in attorney fees and costs to Defendant/Appellee Commonwealth Land Title Insurance, (iv) $2,000 in attorney fees and costs to the law firm of Plunkett & Cooney, P.C.,[2] (v) $1,083.21 in attorney fees and costs to Defendant/Appellees Joel Dault and Progressive Title Insurance Agency, and (vi) $2,226 in attorney fees and costs to Michigan's Attorney Grievance

---

[2]This firm and one of its attorneys were named as "defendants" in at least two motions filed by Debtors, and were alleged to have committed various legal and ethical violations.

Commission.³  This ruling is the subject of Debtors' fourth and final appeal to this Court (Case No. 06-13726.)

## III. ANALYSIS

A. **The Bankruptcy Court Did Not Err in Approving the Trustee's Proposed Compromise of Debtors' Claims Against the Woods.**

   1. **The Standards Governing This Aspect of Debtors' Appeal**

In one of its four challenges that have been consolidated on appeal, Debtors again contend — as they did in their earlier appeal to this Court in Case No. 03-71127 — that the Bankruptcy Court erred in granting its approval of the Trustee's proposal to settle Debtors' state court suit against the Woods for the sum of $10,000. As observed in this Court's September 23, 2004 opinion addressing Debtors' prior appeal, the Bankruptcy Court's authority to approve such a proposed settlement derives from Bankruptcy Rule 9019(a), which provides simply that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

Upon surveying the pertinent case law, the Sixth Circuit Bankruptcy Appellate Panel recently described the standards that govern a bankruptcy court's inquiry under Rule 9019(a):

> The Sixth Circuit Court of Appeals has held that "the bankruptcy court is charged with an affirmative obligation to apprise itself of the underlying facts and to make an independent judgment as to whether the compromise is *fair and equitable.*" *Reynolds v. Comm'r,* 861 F.2d 469,

---

³Again, Debtors had filed motions charging the Commission and one of its members with committing various legal and ethical violations.

7

> 473 (6th Cir. 1988) (emphasis added). The court must weigh the conflicting interests of all relevant parties, "considering such factors as the probability of success on the merits, the complexity and expense of litigation, and the reasonable views of creditors." *Bauer v. Commerce Union Bank,* 859 F.2d 438, 441 (6th Cir. 1988) (citation omitted). "A bankruptcy judge need not conduct a mini-trial or write an extensive opinion every time he approves or disapproves a settlement. The judge need only be apprised of the relevant facts and law so that he can make an informed and intelligent decision and set out the reasons for that decision." *Fishell v. Soltow (In re Fishell),* 47 F.3d 1168, 1995 WL 66622, at *3 (6th Cir. Feb. 16, 1995) (unpublished table decision) (quoting *LaSalle Nat'l Bank v. Holland (In re Am. Reserve Corp.),* 841 F.2d 159,163 (7th Cir. 1987)) . . . .

*Olson v. Anderson (In re Anderson),* 377 B.R. 865, 870-71 (B.A.P. 6th Cir. 2007).

### 2. The Bankruptcy Court Properly Addressed the Pertinent Facts and Considerations in Approving the Trustee's Proposed Settlement.

As noted, this is the second time that the Trustee's proposed settlement of Debtors' state court suit against the Woods has been brought before this Court. In resolving Debtors' prior appeal, the Court determined that a remand was necessary to ensure that the Bankruptcy Court was properly apprised of the facts and law bearing upon an appropriate Rule 9019 inquiry. Having reviewed the record developed in response to this remand and the Bankruptcy Court's subsequent opinion reaffirming its decision to approve the Trustee's proposed settlement, this Court readily concludes that the purpose of its prior remand has been achieved, and that the Bankruptcy Court's ruling should be affirmed.

First and foremost, there can no longer be any doubt that the Bankruptcy Court was fully apprised of the factual and legal bases for Debtors' claims against the Woods, and that Debtors had ample opportunity to produce evidence as to the viability of these

8

claims. In contrast to the record presented on Debtors' prior appeal, which consisted almost entirely of the arguments of counsel and the somewhat terse opinions of the Trustee, the Bankruptcy Court responded to this Court's remand by presiding over several days of evidentiary hearings and reviewing all of the documentary evidence that the parties saw fit to provide. Under this record, it is clear that the Bankruptcy Court met its "affirmative obligation to apprise itself of the underlying facts," so that it could "make an independent judgment as to whether the [Trustee's proposed] compromise [wa]s *fair and equitable.*" *In re Anderson,* 377 B.R at 870 (internal quotation marks and citation omitted).

Likewise, the Court readily concludes that the Bankruptcy Court's September 11, 2006 opinion sufficiently articulates the court's consideration of the appropriate factors and the grounds for its approval of the compromise proposed by the Trustee. First, the Bankruptcy Court observed that the prospects for success in Debtors' suit against the Woods were rather poor, given the "real questions" under the record "as to (a) whether or not there was the required meeting of the minds on the selling price [of the Charring Cross property] and what was due at closing, and (b) the ability of the Debtors to have been able to come up with the cash needed to consummate the transaction even if everything else was agreed upon." (9/11/2006 Bankr. Court Op. at 5.) In addition to these substantial factual questions, the Trustee points out in her brief on appeal that the law would not have been favorable to Debtors' claims against the Woods, where any attempt to enforce the Woods' alleged oral agreement to sell the Charring Cross property

9

likely would have run afoul of Michigan's statute of frauds, *see* Mich. Comp. Laws § 566.108.

Moreover, even assuming that the Trustee could have surmounted these formidable factual and legal obstacles and prevailed on the claims against the Woods, the Bankruptcy Court aptly observed that the resulting benefit to the creditors would have been minimal at best. (*See* 9/11/2008 Bankr. Court Op. at 3-5.)[4] As the Bankruptcy Court noted, the cost of litigating these claims likely would have been substantial, in light of the expenses incurred by the Trustee to date, the possibility of appeals, and Debtors' demonstrated propensity to raise and litigate each and every issue to the point of exhaustion (and often beyond). If, after all that, the Trustee were to prevail, the principal (if not only) relief would have been an order compelling specific performance of the alleged agreement to sell the Charring Cross property. Such an order, of course, would have entailed payment of the allegedly agreed-upon purchase price of roughly $280,000, and this, in turn, would very likely have led the Trustee to immediately resell the property in order to obtain the necessary funds. (*See id.* at 3-4.) As the Bankruptcy Court recognized, the prospects were exceedingly poor that this "success" would have produced a net gain to the bankruptcy estate, let alone a sufficient gain to exceed the $10,000 offered by the Woods.

Debtors' submissions on appeal are almost entirely silent on these issues. Instead,

---

[4]As this Court observed in its opinion in the prior appeal, Debtors do not dispute that their suit against the Woods has been properly deemed to be the property of the bankruptcy estate. Accordingly, any recovery in this suit would have been strictly for the benefit of the creditors.

10

Debtors continue to vigorously advocate their view of the underlying facts, and to accuse those who might take a different view of misrepresentation or out-and-out perjury.  Yet, as explained, the existence of such hotly-disputed factual questions tends to support, rather than undermine, the Trustee's proposal to settle Debtors' claims and the Bankruptcy Court's decision to approve this proposed settlement.  While Debtors doubtless would prefer their "day in court" where a trier of fact would hear Debtors' and the Woods' testimony and credit one over the other, the Trustee is not obligated to pursue such a desire for "justice," but instead must endeavor to act in the best interests of the bankruptcy estate.  Likewise, the Bankruptcy Court is not obligated to conduct a "mini-trial" to ascertain which side would prevail on Debtors' claims against the Woods, but instead must ensure that it is sufficiently apprised of the relevant facts and law to permit an informed judgment as to whether the Trustee's proposed compromise is fair and equitable.  Under the record presented here, the Court is fully satisfied that the Bankruptcy Court's ruling meets this standard.  Accordingly, this ruling is affirmed.

**B.     The Bankruptcy Court Did Not Err in Granting Summary Judgment to the Title Defendants.**

In their next pair of appeals, Debtors seek the reversal of the Bankruptcy Court's September 8, 2006 ruling awarding summary judgment in favor of the Title Defendants on a number of state-law claims asserted by Debtors in Adversary Proceeding No. 04-3044.  Though they raise a number of points in their brief on appeal, Debtors' challenge, in essence, rests upon the proposition that the Title Defendants are subject to liability for

their role in Debtors' failed attempt to purchase the Charring Cross property. Yet, as the Bankruptcy Court properly held, Debtors have failed as a matter of law to state any viable theory of recovery against the Title Defendants arising from Debtors' effort to purchase this property.

This Court reviews *de novo* the Bankruptcy Court's decision to award summary judgment in favor of the Title Defendants. *See McCafferty v. McCafferty (In re McCafferty),* 96 F.3d 192, 195 (6th Cir. 1996). Thus, just as the Bankruptcy Court was governed by the standards of Federal Rule of Civil Procedure 56[5] in resolving the Title Defendants' requests for summary judgment, this Court likewise applies these standards in determining whether an award of summary judgment was appropriate. Under Rule 56, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding whether the Title Defendants were entitled to summary judgment, the Court must view the evidence in a light most favorable to Debtors as the nonmoving parties. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006).

As the Bankruptcy Court recognized, several of Debtors' claims are defeated by the very nature of the role that the Title Defendants played in Debtors' effort to purchase the Charring Cross property. In particular, the Bankruptcy Court explained that one of

---

[5]Rule 56 is made applicable to bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7056.

the Title Defendants, Progressive Title, was requested by Debtors' mortgage broker, Federal Mortgage, to "provide a (mortgage) title insurance commitment for a refinance transaction for the [Charring Cross] property," and this requested title commitment "was prepared and issued to Federal Mortgage." (9/8/2006 Bankr. Court Op. at 3.) The record is clear that this title commitment called only for the issuance of a lender's policy, that Debtors were not identified as proposed insured parties under this title commitment, and that Debtors did not request or obtain an owner's title insurance commitment or policy. Federal Mortgage also asked Progressive Title to "perform escrow closing services for the transaction, and issued closing instructions shortly thereafter." (*Id.*) Thus, at a February 11, 2002 session at Federal Mortgage's office at which Defendant Joel Dault represented Progressive Title, Debtors signed a number of documents, including a "disclaimer acknowledging that Progressive Title was hired to conduct the closing and issue title insurance to the lender and owed no obligation to the [Debtors]." (*Id.*)

Under these circumstances, the Bankruptcy Court correctly found that the Title Defendants served exclusively as "title insurance underwriters," (*id.* at 9), no different from ordinary insurers with duties defined by the policies issued to their insured — in this case, Federal Mortgage, and not Debtors. *See Mickam v. Joseph Louis Palace Trust,* 849 F. Supp. 516, 522 (E.D. Mich. 1994) (reasoning that "a title insurer should be liable in accordance with the terms of the title policy only and should not be liable in tort," because "[t]o hold otherwise does violence to the whole concept of insurance"). Moreover, as the Title Defendants point out in their brief on appeal, the Sixth Circuit has

13

held under analogous facts that a title insurance company serving as agent for a lender owed its sole duty to the lender, and could not be held liable for any alleged breach of the lender's obligation to disburse funds. *Koppers Co. v. Garling & Langlois,* 594 F.2d 1094, 1098 (6th Cir. 1979). "Under long-settled principles of contract law, agency agreements do not create any rights in third parties, even a party as to whom the principal owes some performance and for whose benefit the principal has retained an agent to render it." *Koppers Co.,* 594 F.2d at 1098 (footnote with citation omitted).

These principles defeat many of the claims advanced by Debtors against the Title Defendants in this case. First, these parties cannot be held liable for any breach of a fiduciary duty, as evidently alleged by Debtors in at least one and perhaps two counts of their amended complaint, because they owed no such duty to Debtors in their role as agents/insurers for Federal Mortgage as principal/insured. Next, there is no basis for a breach of contract claim, since there is no evidence in the record of any contractual relationship between Debtors and the Title Defendants. Neither have Debtors cited any authority for the proposition that they could be viewed as third-party beneficiaries of the contractual relationship between Federal Mortgage and the Title Defendants. To the contrary, the Sixth Circuit rejected precisely this theory of recovery in *Koppers Co.,* 594 F.2d at 1098.[6]

---

[6] In any event, there is no allegation or evidence here that the Title Defendants breached any obligation owed to Federal Mortgage. Rather, the record indicates that they performed wholly in accordance with the mortgage broker's instructions.

Debtors' claim of negligence fails for similar reasons, among others. First, the Bankruptcy Court correctly held that the Title Defendants did not owe Debtors a duty of due care. (*See* 9/8/2006 Bankr. Court Op. at 11.) Instead, and as expressly acknowledged in the disclaimer signed by Debtors, the Title Defendants owed obligations solely to Federal Mortgage, and not Debtors. Moreover, this Court is in full agreement with the reasoning in *Mickam,* 849 F. Supp. at 522, that title insurers generally "should be liable in accordance with the terms of the title policy only and should not be liable in tort." Finally, the Bankruptcy Court properly noted the absence of a causal link between the actions of the Title Defendants and the harm identified by Debtors — *i.e.,* the failure of their effort to purchase the Charring Cross property. Whether this transaction failed because of Debtors' failure to secure sufficient funds or because of the Woods' breach of their promise to sell the property at an agreed-upon price that Debtors stood ready, willing, and able to pay, the Title Defendants can hardly be faulted for failing to ensure the success of a transaction that one of the principal parties, whether Debtors or the Woods, was either unable or unwilling to perform.[7]

This leaves only Debtors' claims of misrepresentation and fraud. As the Bankruptcy Court held, Debtors did not specifically allege or produce any evidence that any of the Title Defendants made a material misrepresentation of fact, but instead have

---

[7]Notably, while Debtors accuse the Title Defendants (albeit without any evidentiary support) of taking sides in the transaction, the surest way for the Title Defendants to forfeit their neutral standing would have been to force the sale of the property and the transfer of the deed, despite the express instructions of one of the parties, Paul Wood, that the deed was not to be released from escrow without his written authorization.

15

simply stated "in conclusory fashion" that Defendant Dault "le[]d [them] to believe" that a successful closing had occurred. (9/8/2006 Bankr. Court Op. at 13.) It is difficult to see how Dault's opinion as to the success of the transaction could be deemed material, much less a statement of fact — as explained earlier, the transaction failed as a result of the actions of the principals, and Dault's opinion, one way or the other, surely could not have altered this outcome. Moreover, Debtors soon learned, despite what Dault might have told them, that the transaction had not succeeded, at a point when they were still able, albeit without success, to negotiate an attempted resolution of their differences with the Woods. Next, Debtors could not have reasonably relied on Dault's alleged assertion, where there is no evidence that he was in a position to provide any assurances about what the Woods might or might not do. Finally, there is no evidence that Debtors actually *did* rely on Dault's alleged statement to their detriment — to the contrary, upon learning that the Woods were unwilling to go through with the transaction, Debtors still had an opportunity to negotiate a possible resolution of their differences with the Woods. While this negotiation failed, this could hardly be attributed to any inaccuracy in Dault's earlier alleged prediction that the transaction would go through. Accordingly, the Bankruptcy Court properly awarded summary judgment to the Title Defendants on this and the other claims asserted against them in Adversary Proceeding No. 04-3044.

C.  **The Bankruptcy Court Did Not Abuse Its Discretion in Awarding Sanctions.**

In their fourth and final appeal, Debtors challenge the Bankruptcy Court's July 31, 2006 order directing them to pay a total of $9,309.21 in sanctions to a number of parties

16

for various violations of Federal Rule of Bankruptcy Procedure 9011, the bankruptcy counterpart to Federal Rule of Civil Procedure 11. This Court reviews the Bankruptcy Court's awards of sanctions for an abuse of discretion. *See Mapother & Mapother, P.S.C. v. Cooper (In re Downs),* 103 F.3d 472, 480 (6th Cir. 1996). "An abuse of discretion occurs only when the [bankruptcy] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *In re Downs,* 103 F.3d at 480-81 (internal quotation marks and citations omitted).

Debtors have not identified any such infirmities in the Bankruptcy Court's ruling. Indeed, it is difficult to discern the precise grounds for Debtors' challenge on appeal, as they offer only such general protests as (i) that the Bankruptcy Court "appeared to be upset with us" at one of the hearings, (ii) that "all we did was state facts as we are doing now, and (iii) that "we do not believe the [bankruptcy] court gave a fair decision." (Appellants' Br. at 21-22.) This Court's review is further hindered by Debtors' failure to provide the transcripts of the two relevant Bankruptcy Court hearings: (i) the March 8, 2006 hearing at which the court stated its inclination to award sanctions, in light of the statements made without a factual or legal basis in Debtors' January 9, 2006 motion to charge various parties with civil rights and RICO violations and to order a grand jury investigation, and (ii) the June 14, 2006 hearing at which the court addressed and decided the several motions for sanctions that resulted in the July 31, 2006 order now on appeal. Finally, Debtors offer no argument whatsoever that the amounts of sanctions awarded by the Bankruptcy Court were inappropriate under the standards of Bankruptcy Rule

17

9011(c)(2), which limits such awards to an amount "sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Under these circumstances, Debtors plainly have failed to establish any abuse of discretion.

In any event, this Court's independent review of the record has revealed ample grounds for the Bankruptcy Court's awards of sanctions. Debtors' filings with the Bankruptcy Court — and, in particular, the January 9, 2006 motion that triggered the imposition of sanctions — are replete with *ad hominem* attacks and baseless charges of illegality, criminal conspiracies, perjury, fraud, and racism. In essence, every time a party takes a position adverse to Debtors or offers testimony or documentary evidence that tends to refute their arguments or claims, this is cited in Debtors' subsequent filings as evidence of an unlawful scheme to defraud both Debtors and the courts. This pattern has continued in Debtors' submissions to this Court, with Debtors repeating their call for a grand jury investigation and their charges of perjury, fraud, and deceit. Under this record, the Bankruptcy Court's decision to award sanctions was not an abuse of discretion, and it plainly cannot be said, in light of Debtors' filings with this Court, that the amounts awarded went beyond what was sufficient to deter repetition of Debtors' sanctionable conduct.

## IV. **CONCLUSION**

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that the Bankruptcy Court's September 11, 2006 opinion and corresponding September 8, 2006 order granting the

Trustee's motion to compromise claim, as challenged by Debtors in Case No. 06-14179, are AFFIRMED in all respects. Next, IT IS FURTHER ORDERED that the Bankruptcy Court's September 8, 2006 opinion and corresponding September 8 and September 29, 2006 orders awarding summary judgment to Defendants/Appellees Joel R. Dault, Progressive Title Insurance Agency, Inc., and Commonwealth Land Title Insurance, as challenged by Debtors in Case Nos. 06-14084 and 06-14910, are AFFIRMED in all respects. Finally, IT IS FURTHER ORDERED that the Bankruptcy Court's July 31, 2006 order imposing various sanctions upon Debtors, as challenged by Debtors in Case No. 06-13726, is AFFIRMED in all respects.

             s/Gerald E. Rosen
             Gerald E. Rosen
             United States District Judge

Dated:  September 17, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 17, 2008, by electronic and/or ordinary mail.

             s/LaShawn R. Saulsberry
             Case Manager