UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

WILLIAM A. RANKIN and
SHIRLEY A. RANKIN

     Debtors.

_____/

WILLIAM A. RANKIN and
SHIRLEY A. RANKIN,

     Appellants

v.

BRIAN LEVAN AND ASSOCIATES,
P.C.; COMMONWEALTH LAND
TITLE INS. CO., a foreign corporation;
JOEL R. DAULT; PROGRESSIVE
TITLE INS. AGENCY CO., a Michigan
Corporation; PAUL WOOD, deceased;
KARLA VOLKE-WOOD,

     Appellees

COLLENE K. CORCORAN,

     Trustee – Appellee.

_____/

Consolidated Case No. 06-13726

Bankr. Case No. 02-30596
Chapter 7
Walter Shapero
United States Bankruptcy Judge

Judith E. Levy
United States District Judge

Michael J. Hluchaniuk
United States Magistrate Judge

## REPORT AND RECOMMENDATION
## <u>WILLIAM A. RANKIN'S MOTION TO RE-OPEN (ECF No. 52)</u>

## I.     PROCEDURAL HISTORY

This case has a long and varied procedural history.  Debtors/Appellants

William A. Rankin and Shirley A. Rankin instituted Chapter 7 bankruptcy

proceedings in February 2002.   On March 20, 2003, proceeding *pro se*, Debtors

appealed various Bankruptcy Court rulings. Specifically, Debtors challenged: (i) a

September 8, 2006 opinion and related September 8 and September 29, 2006

orders in which the Bankruptcy Court awarded summary judgment to

Defendants/Appellees Joel R. Dault, Progressive Title Insurance Agency, Inc., and

Commonwealth Land Title Insurance on Debtors' various state-law claims asserted

in Adversary Proceeding No. 04-3044 (Case Nos. 06-14084 and 06-14910); (ii) the

September 11, 2006 opinion and corresponding September 8, 2006 order in which

the Bankruptcy Court granted Chapter 7 Trustee Collene K. Corcoran's motion to

compromise a claim arising from a state court suit instituted by Debtors against

Paul Wood and Karla Volke-Wood (Case No. 06-14179), and (iii) a July 31, 2006

order in which the Bankruptcy Court awarded sanctions to a number of parties,

attorneys, and entities (Case No. 06-13726).

After reviewing the Bankruptcy Court's opinions and orders, on September

23, 2004, this Court remanded the case back to the Bankruptcy Court.  (Case No.

03-71127, ECF No. 6).  On remand, the Bankruptcy Court again granted the

Trustee's motion to compromise a claim, granted summary judgment in the Title

Insurance defendants' favor, and affirmed the issuance of sanctions.  The

Bankruptcy Court's rulings on remand were affirmed in all respects in an Opinion

issued by this Court on September 26, 2008, which closed the appeal.  (ECF No.

29).

Debtors were not deterred.  They continued their push for a favorable

appellate ruling.  After affirming the Bankruptcy Court's orders, this Court later

denied Debtor's motion for reconsideration because it was untimely and the motion

merely presented the same issues ruled upon by the Court without any showing of

"palpable defect."  (ECF No. 32, PageID.269-70).  Debtors then filed two appeals

to the Sixth Circuit.  (ECF No. 44, PageID.297).  The first appeal, filed January 14,

2009, became the operative appeal.  (*Id.*).  On August 23, 2011, the Sixth Circuit

affirmed the Bankruptcy Court's orders in all respects.  (ECF No. 49).  Debtors

then filed a petition for writ of certiorari to the United States Supreme Court,

which was denied on May 3, 2016.  (ECF Nos. 50, 51).

On December 16, 2019, Debtor William A. Rankin[1] filed the instant motion

to reopen the bankruptcy case and for the recusal of the bankruptcy judge under

---

[1] Throughout the motion to reopen, William A. Rankin refers to himself and Shirley A. Rankin, Debtors, as the moving parties.  However, only William A. Rankin signed the motion.  (*See* ECF No. 52, PageID.376).  William A. Rankin, as a *pro se* litigant, cannot represent Shirley A.

Fed. R. Civ. P. 60(d)(3).  (ECF No. 52).  Rankin also filed an amendment to the

motion on February 18, 2020.  (ECF No. 55).  Though called an "amendment," this

document appears to be more argument in favor of Rankin's request for punitive

damages.  Rankin also filed a "memorandum" in connection with his motion to re-

open.  (ECF No. 56).

## II.    FACTUAL BACKGROUND AND PARTIES' ARGUMENTS

The factual background of this case and of the appeals to this Court were

thoroughly and clearly summarized in this Court's September 26, 2008 opinion.

Rather than restate the factual background, it is repeated here.

> In essence, the bankruptcy proceedings arose
> principally from the efforts of Debtors/Appellants
> William and Shirley Rankin to avoid eviction from a
> residence located at 10982 E. Charring Cross Circle in
> Whitmore Lake, Michigan. Before filing for bankruptcy
> protection in February of 2002, Debtors lived at this
> residence for about four years under a land contract with
> Paul Wood and Karla Volke-Wood. When Debtors failed
> to stay current on their payments under this land contract,
> the Woods sought and obtained state court relief,
> including a February 4, 2002 order awarding them
> possession of the property.
>     In an effort to remain in the Charring Cross
> residence, Debtors negotiated with the Woods for the

---

Rankin and bring motions on her behalf as well as his.  28 U.S.C. § 1654 ("In all courts of the
United States the parties may plead and conduct their own cases personally or by counsel.");
*Beard ex rel. Ford v. Hawkins*, 2015 WL 3915877, at *1 (E.D. Mich. June 25, 2015) (non-
attorney parents may not represent the interests of their children *pro se* in federal court); *Smith v.
Heyns*, 2014 WL 2743415, at *2 (E.D. Mich. June 17, 2014) (a *pro se* plaintiff is not
permitted to represent anyone other than themselves before this Court) (citing *Berrios v. New
York City Hous. Auth.*, 564 F.3d 130, 132 (2d Cir. 2009)).  Therefore, the undersigned treats this
motion as brought by William A. Rankin only.

outright purchase of the property. The parties evidently reached an oral agreement on a purchase price of around $280,000, but this agreement was not reduced to writing. Unfortunately, the transaction did not go through, for reasons that are sharply disputed by Debtors and the Woods. Briefly, Debtors contend that they stood ready to fulfill all of their obligations to the Woods — including delivery of the agreed-upon purchase price, most or all of which was to be financed via a loan obtained through Federal Mortgage, a mortgage broker — and that, as a result, the Woods were obligated to produce a deed conveying the property to Debtors. The Woods, on the other hand, contend that the terms of the parties' transaction were altered at the eleventh hour, with the result that the Woods would have netted $10,000 less than the amount to which they had agreed. In any event, after the parties failed to close on the sale of the property, the Woods reinstituted their efforts to take possession of the property, and Debtors, in turn, commenced a voluntary Chapter 7 bankruptcy proceeding, which resulted in an automatic stay of the Woods' state-court efforts to collect the amounts owed by Debtors under the parties' land contract and to evict them from the Charring Cross residence.

Following this failed transaction, Debtors commenced two state-court actions that form the basis for the [] appeals. First, within a few days after filing for bankruptcy protection, Debtors brought suit against the Woods to quiet title to the Charring Cross property and recover damages under various theories.[2] Upon learning of this suit and looking into the matter, Trustee Collene Corcoran agreed to accept the Woods' offer of $10,000 to settle Debtors' claims, and filed a motion with the Bankruptcy Court seeking approval of this proposed

---

[2] In her brief on appeal, Trustee Collene Corcoran states without dispute that Debtors did not disclose any interest in the Charring Cross property in the schedule accompanying their bankruptcy petition, nor did they disclose any potential claim against the Woods regarding this property. Instead, the Trustee evidently learned about Debtors' state-court suit during a meeting with creditors.

settlement. The Bankruptcy Court granted this motion, but this Court reversed this ruling on appeal and remanded for further proceedings, reasoning in a September 23, 2004 opinion that the record was silent as to at least some of the factors that the Bankruptcy Court should have considered in determining whether to approve the Trustee's proposed settlement.

On remand, the Bankruptcy Court conducted an evidentiary hearing spanning several days, during which the court heard the testimony of several witnesses and numerous exhibits were introduced into evidence. Following this hearing, the Bankruptcy Court issued a September 8, 2006 order in which it once again granted the Trustee's motion to compromise the claims asserted in Debtors' state-court suit against the Woods for the sum of $10,000, as well as a corresponding September 11, 2006 opinion setting forth the grounds for its ruling. Through one of the [recent] appeals (Case No. 06-14179), Debtors challenge[d] this ruling.

Next, about two years after filing for bankruptcy protection, Debtors commenced a state-court suit on January 15, 2004 against Defendants/Appellees Joel R. Dault, Progressive Title Insurance Agency, Inc., and Commonwealth Land Title Insurance (collectively, the "Title Defendants"), asserting various claims predicated on the failure of these parties to secure the transfer of the Charring Cross property from the Woods to Debtors back in February of 2002. The Trustee removed this suit to the Bankruptcy Court, and the Title Defendants moved for the dismissal of the case or for an award of summary judgment in their favor. In an opinion dated September 8, 2006 and related September 8 and September 29, 2006 orders, the Bankruptcy Court awarded summary judgment to the Title Defendants, and this ruling [wa]s the subject of two of Debtors' appeals (Case Nos. 06-14084 and 06-14910).

In the course of the Bankruptcy Court proceedings, a number of motions were filed seeking the imposition of sanctions against Debtors for their filing of claims and papers that lacked a basis in fact or law and/or were

presented for improper purposes. Following a June 14, 2006 hearing, the Bankruptcy Court entered a July 31, 2006 order directing Debtors to pay (i) $1,000 in attorney fees and costs to the Woods, (ii) $1,000 in attorney fees and costs to the Woods' former attorney, Robert Detweiler, (iii) $2,000 in attorney fees and costs to Defendant/Appellee Commonwealth Land Title Insurance, (iv) $2,000 in attorney fees and costs to the law firm of Plunkett & Cooney, P.C., (v) $1,083.21 in attorney fees and costs to Defendant/Appellees Joel Dault and Progressive Title Insurance Agency, and (vi) $2,226 in attorney fees and costs to Michigan's Attorney Grievance Commission.

## III.   ANALYSIS AND RECOMMENDATIONS

### A.   Standard of Review

To avoid the one-year time constraints imposed by Fed. R. Civ. Pro 60(b)(3), Rankin brings this motion under Rule 60(d)(3). Although it is true that Rule 60(d)(3) is not subject to the time limits governing Rule 60(b) motions, the Sixth Circuit has recognized that the Rule 60(b) time limits would be "eviscerate[d]" if an otherwise untimely Rule 60(b)(3) motion seeking relief from a judgment on the basis of fraud could simply be recast as challenging a judgment for "fraud on the court" under Rule 60(d)(3). *Buell v. Anderson*, No. 02-4033, 48 Fed. Appx. 491, 498 (6th Cir. Sept. 24, 2002); *see also United States v. Beggerly*, 524 U.S. 38, 46 (1998). To avoid this result, relief under Rule 60(d)(3) for fraud on the court is available only in "unusual and exceptional circumstances," and this provision will be invoked only "to prevent a grave miscarriage of justice." *Buell*,

48 Fed. Appx. at 498 (internal quotation marks and citations omitted).  "Treatises speak of such flagrant abuses as bribing a judge, employing counsel to exert improper influence on the court, and jury tampering." *General Med., P.C. v. Horizon Health Care Corp.,* 275 Fed. Appx. 65, 71 (6th Cir. 2012) (quoting 11 Charles Alan Wright et al., *Federal Practice & Procedure* § 2870 (West 2011) (collecting cases)).

Federal Rule of Civil Procedure 60(d)(3) provides that a judgment may be attacked for fraud on the court. "Fraud on the court consists of conduct: '1) on the part of an officer of the court; that 2) is directed to the judicial machinery itself; 3) is intentionally false, willfully blind to the truth, or is in reckless disregard of the truth; 4) is a positive averment or a concealment when one is under a duty to disclose; and 5) deceives the court.'" *Johnson v. Bell,* 605 F.3d 333, 339 (6th Cir. 2010) (quoting *Carter v. Anderson,* 585 F.3d 1007, 1111 (6th Cir. 2009)). The movant bears the burden of proving existence of fraud upon the court by clear and convincing evidence. *Id.*

B.     Discussion

As an initial matter, one of Rankin's requests is that this Court "reopen the Supreme Court of the United States for Writ of Error; Case # 15-8397 U.S.C. § 1651." (ECF No. 52, PageID.330).  He essentially challenges the Supreme Court's decision to deny his petition for writ of certiorari. (*Id.* at PageID. 279-84).  To the

extent Rankin asks this Court to revisit the Supreme Court's decision or somehow reopen the Supreme Court case, the undersigned suggests that the request be denied because this Court does not have the authority to grant such relief. This Court certainly cannot grant a writ of certiorari to the Supreme Court.

Turning now to Rankin's motion to re-open the bankruptcy case, the undersigned concludes that Rankin has not shown the "unusual and exceptional circumstances" necessary to grant relief. Although the briefing on the motion is somewhat circular and unclear, Rankin essentially raises three arguments or instances in which he alleges there was fraud on the court. Although there is no definitive time limit for bringing a Rule 60(d)(3) motion, the undersigned notes that this motion, which challenges bankruptcy orders from 2006, is rather untimely. Not only were bankruptcy proceedings complete in 2006, appellate review in the District Court was complete in 2008, Sixth Circuit review was complete in 2009, and Supreme Court review was complete in 2016. Still, Rankin waited until December 2019 to bring this motion, and he does not argue that he only recently came upon evidence of fraud on the court. Again, the Sixth Circuit has recognized that the Rule 60(b) time limits would be "eviscerate[d]" if an otherwise untimely Rule 60(b)(3) motion seeking relief from a judgment on the basis of fraud could simply be recast as challenging a judgment for "fraud on the court" under Rule 60(d)(3). *Buell v. Anderson,* No. 02–4033, 48 Fed. Appx. 491,

498 (6th Cir. Sept. 24, 2002).  However, the undersigned suggests that the motion

be denied on the merits because the arguments are an attempt to rehash issues

raised before the bankruptcy court and in appeals to this court, as discussed more

fully below.

        1.     Notice of Ruling Argument

The first of Rankin's arguments involves the Woods' attorney, Timothy

MacDonald, and the bankruptcy judge, Walter Shapero.    This argument concerns

an order entered by Judge Shapero on March 11, 2006, granting creditors' Paul

Wood and Karla Volke-Wood's "Motion for Relief From the Automatic Stay and

for entry of an Order Waiving the Provisions of FRBP 4001(a)(3)."  (ECF No. 53,

PageID.403).  The judge stated in the order that the "Motion and Notice were

properly served on all interested parties."  Rankin disagrees; he says he never

received notice of the motion or the ruling on the motion and blames MacDonald

for not serving him or mailing him a copy.  (ECF No. 52, PageID.333-35).  Rankin

learned of the ruling on April 11, 2006, when the State court ordered that the

Rankins be evicted from the Charing Cross property since the stay was lifted.   He

argues that MacDonald's actions—apparently neglecting to serve the motion and

the order on plaintiff—constituted fraud on the court.

As for the bankruptcy judge's involvement, Rankin says the judge "showed

his contempt" by denying plaintiff's ex parte emergency motion dated April 11,

2006.  (ECF No. 53, PageID.404).  This April 11, 2006 motion from plaintiff was a "Motion for Order for Relief from the Automatic Stay."  (ECF No. 53, PageID.404).  He says that if he had known about the March 11, 2006 order, he would have challenged it.  (ECF No. 52, PageID.335).

The alleged fraud on the court as to MacDonald is, apparently, that MacDonald did not mail Rankin a copy of the motion to lift the stay and did not mail him a copy of the court's order granting that motion and lifting the stay. Whether it was MacDonald's burden to provide Rankin a copy of both is of no moment for purposes of this Rule 60(d)(3) motion.  Rankin has not shown by clear and convincing evidence that any failure in this regard constitutes fraud by positive averment or concealment that actually deceived the bankruptcy court in such a way as to affect the outcome of the case.  At most, it sounds more akin to fraud between the parties (if one assumes MacDonald failed to serve the motion on Rankin in order to deceive him or to get a ruling before the Court could hear from Rankin), but this is insufficient for relief from the March 11, 2006 ruling under Rule 60(d)(3).  "Fraud on the court (other than fraud as to jurisdiction) is fraud which is directed to the judicial machinery itself and *is not fraud between the parties* or fraudulent documents, false statements or perjury."  *LaVenture v. Haeberlin*, 2009 WL 2762267, at *1 (W.D. Ky. Aug. 27, 2009) (quoting *Bulloch v. United States,* 721 F.2d 713, 718 (10th Cir.1983) (emphasis added)).

11

Further, even if Rankin did not get a copy of the motion and order, the bankruptcy could have been made aware of that fact when Rankin filed his motion for reconsideration on April 11, 2006, to undo the March 11th order. However, neither Rankin nor his wife raised such a challenge. The Rankins' motion for reconsideration was untimely, and thus denied. The bankruptcy judge listed the arguments made in the motion, none of which were that the Rankins did not have notice of the motion to lift the stay or of the March 11th ruling. (ECF No. 53, PageID.404). Rankin does not argue here that he raised this argument. In short, Rankin's insistence that, had he known about the March 11, 2006 ruling, he would have challenged it, does not make sense given that he did in fact challenge the ruling in his motion on April 11, 2006.

Rankin also argues that he was denied due process because he was not given notice and an opportunity to be heard on the motion to lift the stay before the judge granted the motion. The undersigned does not take lightly the allegation that there was a violation of due process.[3] This argument would be appropriate for a motion under Rule 60(b)(4), which permits a court to grant relief from a judgment if the judgment if void. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260,

---

[3] It is not altogether clear whether Rankin or his wife provided argument, whether in person or in writing, to the bankruptcy court prior to the ruling, or whether the motion was considered unopposed. In the ruling, Judge Shapero indicated that arguments "by the parties" were heard in "open court." (ECF No. 53, PageID.403). This language indicates that the Rankins were present at a hearing on the motion and were heard.

270 (2010) ("Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard.").  But Rankin's motion is brought, and could only be brought, under Rule 60(d)(3).  The "fraud on the court" contemplated by Rule 60(d)(3) has been defined as "'egregious conduct involving a corruption of the judicial process itself.'" *Gen. Medicine, P.C. v. Horizon/CMS Health Care Corp.*, 475 Fed .Appx. 65, 71 (6th Cir. 2012) (quoting 11 Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 2870).  Even if Rankin did not receive notice of the motion or an opportunity to be heard before Judge Shapero lifted the automatic stay, there is no showing from Rankin that any action by attorney MacDonald or the judge was "egregious conduct involving a corruption of the judicial process itself."  This is so especially considering Judge Shapero entertained a motion brought by the Rankins for relief from the March 11th order.  Presumably, the Rankins could have raised lack of notice in that motion.

As stated, Rankin also claims that the bankruptcy judge "showed his contempt" by denying Rankin's motion for relief from the March 11, 2006 order, and then sometime thereafter entering an order prohibiting Rankin and his wife from filing any further proceedings.  (ECF No. 52, PageID.335).  This challenge is not one of fraud of the court.  Rather, it is a challenge to the merits of the

bankruptcy judge's rulings.  This is not an appropriate Rule 60(d)(3) challenge.
*See Richard v. Mohr*, 2019 WL 3980717, at *2 (S.D. Ohio Aug. 23, 2019)
("[P]laintiffs' objection basically reargues the merits of their claims based on their
own interpretation of the case law. The import of their objection is that the
magistrate judge perpetrated a fraud on the court because she did not agree with
plaintiffs' view of the legal authorities. The court finds that the fact that the
magistrate judge's interpretation of the legal authorities differed from plaintiffs'
reading of these authorities does not establish that a fraud on the court was
committed by the magistrate judge in this case.").  There is no clear and
convincing evidence that the denial of the Rankins' motion and the order
prohibiting them from filing anything further without permission were due to any
fraud on the court, such as "bribing a judge, employing counsel to exert improper
influence on the court, and jury tampering." *General Med., P.C.*, 275 Fed. Appx.
at 71.  The undersigned finds no basis on which to grant Rankin relief on this
argument.

      2.    Trustee's Compromise Claim Argument

     Though not entirely pertinent to the Rule 60(d)(3) analysis, it is worth
pointing out that within portions of Rankins' second argument, Rankin conflates
the summary judgment standard used to assess the Title Defendants' motion for
summary judgment with the bankruptcy standard used to assess the Trustee's

motion to compromise a claim.  Summary judgment motions are reviewed under Fed. R. Civ. P. 56, while the Bankruptcy Court's authority to approve a settlement or a compromise comes under Bankruptcy Rule 9019(a).  This conflation results in an argument from Rankin that there were issues of material fact that remained that should have prevented the bankruptcy judge from ruling in the Trustee's favor on her motion to compromise a claim.  These issues of fact are regarding whether the Rankins/Debtors stood ready to pay the $280,000 purchase price for the Charring Cross property and whether, if there was a shortfall in the amount they had ready, they took appropriate steps to cure the shortfall.  Although Rankin continuously cites summary judgment rule Fed. R. Civ. P. 56 and discusses issues of material fact, he also cites the appropriate standard the bankruptcy court followed in assessing the motion to compromise a claim, ostensibly asserting that Judge Shapero's ruling under the appropriate law was incorrect because the Rankins were able to purchase the Charring Cross property.  (ECF No. 52, PageID.337-39).

Rankin accuses Trustee Corcoran of submitting "misleading" evidence to the bankruptcy court about the Rankins' ability to pay the purchase price.  (ECF No. 52, PageID.343).  He also accuses the Woods' attorney, Mr. Detweiler, of withholding evidence that showed they could tender the purchase price through a loan from Federal Mortgage.  (ECF No. 52, PageID.335).  According to Rankin, their actions constitute lack of candor to the tribunal and fraud on the court.

Rankin says the judge had "personal knowledge of disputed evidentiary facts concerning the proceeding," but ignored the facts and did not give a hearing and ruling on the evidence submitted by him, Rankin.  (ECF No. 52, PageID.343).  The evidence Rankin submitted, according to Rankin, showed that the money was available and ready to be transferred to the Woods.  (ECF No. 52, PageID.335-36).  Rankin "believe[s]" that the judge erred on remand when he ruled against Rankin and that the judge should be disqualified.  (ECF No. 52, PageID.345).

In the view of the undersigned, Rankin has failed to establish that either the Trustee or Mr. Detweiler committed fraud on the court during the proceedings on the motion to compromise a claim.  Rankin accuses them of concealing evidence or producing misleading evidence in regard to his ability to pay the purchase price, but Rankin is also clear that he submitted evidence that showed he could provide the required funds.  Fraud on the court consists of conduct that is intentionally false that "deceives the court." *Johnson*, 605 F.3d at 339.  Rankin has not shown that Judge Shapero granted the Trustee's motion because he was deceived by the Trustee's and Detweiler's evidence.  Put another way, Rankin has not shown that Judge Shapero treated the evidence submitted by the Trustee and Mr. Detweiler as anything more than part of the full picture of evidence to consider relating to the motion to compromise a claim.  Instead, it is clear that Judge Shapero considered the competing evidence, as discussed above in this Court's opinion affirming the

bankruptcy ruling, including Debtors' evidence that they were ready to pay the purchase price.

Moreover, "[a]llegations of nondisclosure during pretrial discovery are not sufficient to support an action for fraud on the court." *H.K. Porter Co., Inc. v. Goodyear Tire & Rubber Co.,* 536 F.2d 1115, 1118 (6th Cir.1976) (citing 11 C. Wright & A. Miller, Fed. Prac. & Proc. s 2870, p. 254 (1973)) ("[T]he alleged perjury of a witness [is also not a] ground for an action for fraud upon the court."). The adversarial process—discovery tools and cross-examination of witnesses—is designed to test the truthfulness of evidence and to bring to light additional evidence, as was done before the bankruptcy court.

Rankin's argument is really a challenge to the merits of Judge Shapero's opinion granting the motion to compromise a claim because of the factual dispute between the parties. Rankin believes that, because there is a dispute of fact, some fraud on the court must have occurred because Judge Shapero, despite the dispute of fact, granted the motion to compromise a claim. Again, disagreement on the merits of a ruling is an insufficient basis for a Rule 60(d)(3) motion. Further, the fact that there was, and still is, a dispute of fact does not raise any question as to the propriety of the bankruptcy ruling for all the reasons this Court already stated in its September 2008 opinion affirming the Bankruptcy Court. (ECF No. 29, 243-

46).  Rankins' argument here appears to be the same as it was in the appeal, which

was aptly summed up and dismissed in that opinion as follows.

> Debtors continue to vigorously advocate their view of the
> underlying facts, and to accuse those who might take a
> different view of misrepresentation or out-and-out
> perjury. Yet, as explained, the existence of such hotly-
> disputed factual questions tends to support, rather than
> undermine, the Trustee's proposal to settle Debtors'
> claims and the Bankruptcy Court's decision to approve
> this proposed settlement. While Debtors doubtless would
> prefer their "day in court" where a trier of fact would
> hear Debtors' and the Woods' testimony and credit one
> over the other, the Trustee is not obligated to pursue such
> a desire for "justice," but instead must endeavor to act in
> the best interests of the bankruptcy estate. Likewise, the
> Bankruptcy Court is not obligated to conduct a "mini-
> trial" to ascertain which side would prevail on Debtors'
> claims against the Woods, but instead must ensure that it
> is sufficiently apprised of the relevant facts and law to
> permit an informed judgment as to whether the Trustee's
> proposed compromise is fair and equitable. Under the
> record presented here, the Court is fully satisfied that the
> Bankruptcy Court's ruling meets this standard.
> Accordingly, this ruling is affirmed.

(ECF No. 29, PageID.246).

In sum, Rankin has brought forth no evidence, let alone clear and convincing

evidence, that the Trustee and Mr. Detweiler committed a fraud on the court during

the evidentiary phase of the bankruptcy court's analysis of the proposed

compromise.  There simply is no evidence of "egregious conduct involving a

corruption of the judicial process itself" amounting to fraud on the court.

18

Finally, Rankin claims that Joel Dault, one of the Title Defendants, altered or made an adjustment to some document related to the potential purchase of the property without telling him, Rankin, in violation of the Truth in Lending Act. (ECF No. 52, PageID.335; ECF No. 53, PageID.429-30).  Although Rankin believes Dault violated the Truth in Lending Act (an improper claim for a Rule 60(d)(3) motion), he does not claim that Dault committed some fraud on the court. Even if Rankin had claimed that Dault's actions were a fraud on the court, the claim should fail because Dault is not an officer of the court, the first element necessary for fraud on the Court.  Lawyers preparing their clients' cases are officers of the Court, as are bankruptcy trustees, *Comp. Leasco, Inc. v. NTP, Inc.,* 194 Fed. Appx. 328, 338 (6th Cir.2006) ("A lawyer is an officer of the court while preparing her client's case."); *In re M.T.G., Inc.*, 366 B.R. 730, 749 (E.D. Mich. 2007), but not an employee of a title agency.

### 3. Rankin's Third Argument

In his third argument, Rankin again asserts that the evidence shows a factual dispute as to why the closing did not occur on the Charring Cross property, i.e. whether he had the funds to purchase the property or whether the purchase fell through for some other reason.  Rankin discusses a faxed document in which it is indicated that Mrs. Wood did not want to sell the property to Rankin, but her reason was not that Rankin did not have the money to buy the property.  He also

argues, as in his second argument, that the Trustee withheld information that would ultimately show that the Rankins were ready and able to pay the purchase price. (ECF No. 52, PageID.347-51, 355-56).  Again, as stated above, Rankin's argument does not entitle him to relief under Rule 60(d)(3).  Rankin says that he presented evidence to the bankruptcy judge showing he could purchase the property.  The argument fails because there is no clear and convincing evidence of fraud that actually deceived the bankruptcy judge as to whether the Rankins stood ready to purchase the property.  It is true that there were factual issues left unresolved by the bankruptcy court, as discussed above and this Court's 2008 opinion (quoted above).  However, there is no impropriety here because the bankruptcy court was not obligated to find the truth of the matter.  Rather, Judge Shapero's task was to assess the fairness to the bankruptcy estate of the compromise plan under bankruptcy rule 9019(a).  Rankin's disagreement with the bankruptcy judge as to the merits of the ruling is not grounds for reversal of a judgment for fraud on the court.

Rankin also accuses Judge Shapero of having a personal bias against him and his wife in the bankruptcy proceedings.  The only evidence proffered to support this assertion is that Judge Shapero ruled against the Rankins despite the factual disputes and issued sanctions against them.  (ECF No. 52, PageID.348). Rankin does not allege that Judge Shapero accepted any bribes or was improperly

20

influenced, or that Judge Shapero bribed any party or litigant before him or improperly influenced anyone himself.  The fact that certain rulings did not go in the Rankins' favor does nothing to demonstrate, by clear and convincing evidence, that Judge Shapero was engaged in any fraud that defiled the court or that was directed at the judicial machinery itself.  "While [Rankin] may disagree with the [Court]'s rulings, and may in fact resent the [Court] for such rulings, this is not evidence of 'fraud on the court.'"  *Steele v. Motz*, 2009 WL 8131857, at *3 (D.Md. Nov. 19, 2009).  No bias or impartiality can reasonably be drawn from the mere fact that Judge Shapero ruled against the Rankins.

Rankin further argues for Judge Shapero's recusal under 28 U.S.C. § 455. (*See* ECF No. 52, PageID.355).  He says they, the Rankins, did not have any evidence beyond the closing documents to show that they could pay the purchase price for the home.  They did not have witnesses of their own and did not get the defendants' exhibits until two years into the bankruptcy.  Despite these setbacks, they were able to demonstrate at the hearing that defendants' witnesses were lying. Still, the judge ruled against them which shows his bias against them.[4]  Rankin continues that the order granting sanctions against the Rankins was "egregious,

---

[4] It appears Rankin is referring to the ruling granting the Trustee's motion to compromise a claim here.

hostile and intimidating," that they were broke and could not afford the $9,309.21 in awarded costs and fees. (*Id.*).

The motion, or argument at least, is untimely. The purpose of § 455(a) is "to prevent the appearance of bias and to preserve the public's faith in the judicial process." *United States v. Die kemper,* 604 F.3d 345, 354 (7th Cir. 2010). It follows that "[o]nce the proceedings at issue are concluded, a post hoc motion for recusal will do little to remedy any appearance of bias that was present." *Id.* The bankruptcy proceedings over which Judge Shapero resided were closed in 2006. An order for Judge Shapero's recusal now will do little the remedy any appearance of bias that may have been present. The undersigned, however, does not believe that Rankin has presented sufficient evidence of bias in any event. Although a judge must disqualify himself in any proceeding in which his impartiality might reasonably be questioned or where he actually has a personal bias or prejudice against a party, *see* 28 U.S.C. § 455(a) and (b)(1), it is well established that neither "judicial rulings" nor "opinions ... as a result of what [a judge] learned in earlier proceedings," standing alone, constitute a valid basis for bias or prejudice. *Liteky v. United States,* 510 U.S. 540, 551, 555 (1994). Rankin has not set forth a basis in fact for finding that Judge Shapero harbored some impartiality or personal bias towards Rankin in his rulings, even those rulings that were against Rankin.

Rankin attempts to bring a Fair Housing Act claim and general claims of racial discrimination against a number of the defendants and/or creditors.  (ECF No. 52, PageID.352-54).  He also says, in relation to his second argument, that his "claims are predicated upon 42 U.S.C. § 1983."  (*Id.* at PageID.343).  Raising completely new claims that are wholly apart from the matter under question here— the bankruptcy proceedings—is clearly not a proper subject for a Rule 60(d)(3) motion.  A rule 60 motion is a method by which a litigant may seek relief from a judgment or an order.  It is not a proper means to raise new causes of action.

Finally, Rankin also discusses at length his request for punitive and other damages.  (ECF No. 52, PageID.356-76).  It appears that the amendment to the motion (ECF No. 55) and the memorandum (ECF No. 56) contain, at least in part, more argument in support of their request for damages.  An award of damages is not an appropriate form of relief under Rule 60(d)(3).

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion to re-open under Rule 60(d)(3) be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  March 17, 2020                    s/Michael J. Hluchaniuk
                                          Michael J. Hluchaniuk
                                          United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

      I certify that on March 17, 2020, I electronically field the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by United States Postal Service to the following non-ECF participants: William Rankin, 16623 Sussex, Detroit, MI  48235 and Shirley A. Rankin, 16623 Sussex, Detroit, MI  48235.

<br>

                            s/ Durene Worth
                            Case Manager
                            (810) 341-7860
                            durene_worth@mied.uscourts.gov